Case in the matter of St. Catherine Hospital. God, this is going to be an extended clip.  If it may please the Court, this Court should conclude that Indiana's pre-bankruptcy conduct in passing Public Law 229, Section 281, defining the fee period of the hospital assessment fee of spanning two years, created a pre-petition claim for the amount stated in the statute. Additionally, this Court should conclude that the District Court committed error in finding Indiana's post-bankruptcy conduct in sending a billing statement to St. Catherine's Hospital created a post-petition administrative claim for that amount. Our position is based on two arguments. First, the Seventh Circuit precedent holds that when a contract or statutory duties arise before the bankruptcy filing, the entire obligation is treated as a pre-petition debt, even post-petition assessments. Second, Indiana legislature defined the hospital fee in Section 281 as arising before the bankruptcy filing, and the decision of Indiana's FSSA to make post-petition assessments cannot change the statute. The Seventh Circuit case law establishes that a bankruptcy claim is a pre-petition debt if the debtor's contractual or statutory duties arose before the petition date. In Rostec, this Court established how post-petition assessments are handled when the debtor and creditor enter into a pre-petition contract. The Court concluded that the entire obligation is treated as a pre-petition debt, and this includes post-petition assessments. In this case, a condominium association reached a pre-petition agreement providing the debtor would pay future fees. The Seventh Circuit held all condominium post-petition assessments were pre-petition debts based on the pre-petition agreement. Rostec rejected the argument that sums levied after the bankruptcy filing were post-petition debts. The analysis is the same whether the issue involves a duty arising from a contract or a duty arising from a statute. In the 1992 Chicago, Milwaukee, St. Paul, and Pacific case, it analyzed whether statutory CERCLA liability arose pre-petition. While debtor was in bankruptcy, the creditor learned that debtor caused a hazardous chemical release and knew it would lead to CERCLA costs. The creditor did not bring a claim until after it incurred response costs in accordance with requirements of CERCLA. The Seventh Circuit concluded the creditor's CERCLA claim arose pre-petition, even though the response costs were incurred post-petition. The Court was concerned that creditors could unfairly delay asserting claims until after the bankruptcy was concluded if they were not required to bring the claims when they first learned of them. St. Catherine's Hospital's obligation to pay the hospital fee arose from Indiana's enactment of Section 281. The language of this statute establishes that the debtor's obligation for the entire two-year hospital fee period arose pre-petition. Subpart A3 of the statute defines the hospital fee period as including Indiana's two fiscal years running from July 1, 2011, to June 30, 2013. So long as the hospital fee program is operating, collection of the fee is only limited by Subpart D and Subpart W, which prevent collection of this debt after the fee period ends. The law does not limit collection of the fee to hospitals that ceased operating during the fee period. Now, Subchapter S of the statute gives the FSSA discretion to allow a hospital to make a hospital fee payment in installments, but no part of Section 281 gives the agency discretion to divide the fee period into two separate fiscal years. Indiana claims that the notice of hospital assessment fee due supports its position that the 2013 hospital fee is a post-petition debt. The inclusion of the word assessment in this notice is significant. First, Section 281 uses the term fee period without the word assessment. Second, a post-petition assessment is precisely what Rostec Court held did not convert the obligation into a post-petition debt. Policy considerations also support our conclusion. First, creditors should not be permitted to argue that post-petition collection activities create a post-petition debt. This can lead to claim manipulation. Second, Congress envisioned that bankruptcy courts be presented with all possible claims. Failing to do so will upstate the priority scheme in the Bankruptcy Code. In this case, if Indiana has a post-petition debt, they will be getting administrative priority, and so they will move itself up the priority scheme. Before I leave that issue of priority, there was some issue in this case about a tax akin to a tax, and again, if this is a tax, that would also move Indiana up the priority scheme. Now, the position of Indiana is that it's not a tax, and so that it should be just a pre-petition, unsecured general claim. Third, the case law is clear that when you have a contract claim or a statutory claim, that those most likely arise pre-petition when those duties arise. St. Catherine Hospital owed the entire hospital fee for both fiscal years upon enactment of the statute. Although Indiana billed the hospital for the 2013 hospital fee post-petition, this does not turn a pre-petition debt into a post-petition administrative claim. I'd like to reserve some time. Thank you. Ms. Skiles. May it please the Court. Marysel Skiles for the Indiana Family and Social Services Administration, along with my co-counsel, Heather Crockett. This case is about determining when a claim arises for purposes of treatment by the bankruptcy estate. This Court should affirm the District Court's decision and hold that the 2013 fiscal year hospital assessment fee is a post-petition debt not subject to the automatic stay. Today, I will be addressing the date a claim on a debt arises, as determined by the date of the conduct giving rise to the claim. Now, the 2010 and 2013 fee assessments were based on the same set of data, right? The fee assessments were based on the hospital reports, hospital cost reports, as of the date pursuant to the statute. Well, was any of the data collected after the hospital filed its bankruptcy petition? Not at that time. That was what was on hand that St. Catherine's had submitted to FSSA for assessment. Well, why aren't the activities reflected in the data of the conduct that gave rise to the hospital's 2013? The fee itself was based on the hospital cost reports. The conduct that triggered the liability was the hospital being an eligible hospital under the Indiana Code as of July 1, 2012, the first day of this 2013 fiscal year. The hospital assessment fee is an annual assessment that's triggered by a hospital's eligibility at the beginning of an assessment period. Pursuant to Section 281, if the hospital meets the definition under the Indiana Code, they are liable to pay this fee. Under the initial enactment of Section 281, the statute did define the total fee period as two state fiscal years. The two separate fiscal years created two separate and distinct hospital assessment fee liabilities. Judge Barker in her decision, as we would also like to point out, four separate factors to illustrate this notion, one being that FSSA did issue separate annual bills to St. Catherine's. Of those, the fiscal year 2013 statement was delivered on July 18, 2012, approximately one month post-petition. Within that notice, it stated that the hospital assessment fee was assessed on an interim basis. Further, St. Catherine's was notified that once final calculations were completed, the assessment would be adjusted to reflect the final calculations and any difference between the interim and the final assessment would be added to the assessment or returned to the hospital, whichever way it went. Second, each notice did identify the hospital assessment period of a single year corresponding with the state fiscal year. Three, the testimony before the bankruptcy court that showed from St. Catherine's CEO, Merlin Knapp, stating that it was also divided into two one-year parts, that shows the understanding and the intent behind the statute and the understanding behind what the hospitals understood this fee to be. And finally, there was the provider bulletin that explained that only hospitals licensed under the Indiana Code were liable to pay this fee and that if they lost eligibility or they ceased operations as an eligible hospital under the Indiana Code, then at that time they had 30 days to notify FSSA. If St. Catherine had ceased operations or failed to qualify as an eligible hospital under Section 281 prior to July 1, 2012, they would not have been liable for the 2013 state fiscal year hospital assessment fee. If they had gone in three months into the state fiscal year 2013, FSSA would prorate that amount for the amount of time that they were in operation during that period. Under the conduct theory, FSSA's claim for the 2013 fiscal year hospital assessment fee is a post-petition claim because the conduct giving rise to the claim that operation as an eligible hospital under the Indiana Code occurred on July 1, 2012, after the filing of the bankruptcy petition on June 19, 2012. Your Honors, at this time I'd like to turn it over to my co-counsel, Heather Crockett, to complete our arguments. Ms. Crockett. I would like to address one question that was raised about the cost reports. St. Catherine was responsible solely for presenting cost reports to FSSA. They had the opportunity to present newer cost reports to have their numbers refigured and did not present newer cost reports than what was used at the time the initial decision was made as to their amount that was going to be due for the fiscal years. Other hospitals did update cost reporting, which is part of the reason that there was an interim amount assessed initially and then there was a finalized amount as those numbers went into those finalized amounts. St. Catherine's has raised at this Court of Appeals level for the very first time the issue of a contingent claim. Because they've waited to raise it until this point, it is a waived argument. And even if it is not waived, it is a baseless argument. It is well established within the case law that if an argument is not raised at the trial court level, it is waived. Even general terms are not sufficient to preserve an argument. The only time St. Catherine's mentioned the term contingent was in their definition of the term claim. That is not even raised as a general discussion. It is simply a definition that was quoted. Contingent claims are specialized claims within the bankruptcy court. They require specialized facts to be presented and specialized findings to be determined. Just raising the issue of whether or not a claim exists is not sufficient to raise a contingent claim. And it is not sufficient to preserve the argument. Beyond that, it's a baseless claim. The discussion of a contingent claim usually looks at a contract or a tort. Mr. Gannett discussed two of those issues. One being a contract where there's a pre-petition agreement to make payments. There is no agreement in this case. This is strictly a statutory requirement to pay. The other case that he mentioned was the Chicago and Milwaukee case. And that case is distinguishable. In that case, the conduct that gave rise to the claim was the release of the chemicals, which clearly occurred pre-petition. In this case, the conduct that we're looking at is the conduct of the fact that St. Catherine's was an operating eligible hospital on the first day of the assessment period, which is post-petition. It is a post-petition debt based on that conduct. Now, the time period that they, the fee period was between, I mean, it ended June 30, 2013, correct? That is correct. The entire fee period under the statute, which was a two-year test statute. Right, from July 1, 2011 to June 30, 2013. That is correct. But the statute was specifically set up for a committee to determine how to actually enable and to work the statute correctly. And that was the decision that the statute didn't clearly lay out one way or the other if it was a one fee or two fee. It was up to FSSA to determine how to implement this. And the decision to implement it was to create two different assessment periods. And that was allowed to them. The statute doesn't have to give that discretion. It was an enabling statute. The discretion is implied. My opposing counsel also mentioned the policy considerations. This is a slightly different situation than a contract or a creditor just issuing a billing statement. The policy considerations here are statutes. Statutes enacted by a legislature quite often years in advance of a bankruptcy filing. Should those statutes and the requirements to make payments based upon those statutes be all determined to be pre-petitioned, just simply because the statute was enacted prior to the petition, or that the statute set forth the amount of the fees due prior to the petition? It just seems an unworkable decision. My opposing counsel also mentioned this issue of an akin to a tax. And he's right. We never said it was a tax. The district court merely used the phrase akin to a tax to help describe the changed relationship. And the fact that this was a pre-loaded statute. This was designed to have a fee assessed and set up to fund a fund to pay out these increased reimbursements. And for those reasons, we ask the court to affirm the district court's decision that the half is a post-petition debt. If there's no other questions. Thank you. Ms. Kennedy. May it please the court. Thank you, Your Honor. Ellen Kennedy for the recently substituted Chapter 11 trustee. Opposing counsel is correct. This is a pre-loaded statute. On the filing of its Chapter 11 case, the debtor was aware that it was subject to a hospital assessment fee due to the enactment of Section 281. The fee period was expressly defined as a two-year period in which ran from July 1, 2011 to June 30, 2013. The committee referenced by my opposing counsel had met pre-petition and had created the assessments and looked at data that had been collected pre-petition for the purpose of calculating the assessment fee due by the hospital at that time. The FSS claim for the hospital fee existed at the time of filing, making it a pre-petition claim not entitled to post-petition claim admin priority status. The bankruptcy court definition of claim is important here, and it is to be interpreted broadly and is to include any and all contingencies that may arise due by the debtor at the time that the claim is established. To the extent the debtor's continued operations place any role in the assessment of when this claim is due, it is only to fulfill a contingency of the pre-petition claim established prior to the filing of bankruptcy. The debtor has not waived its arguments that this is a contingent claim. In this case, the FSSA was aware of the claim when the hospital fee committee enacted and approved and calculated all the pre-petition amounts due and sent a bulletin notifying the hospital and all other hospitals that the fee would be due. The debtor has consistently argued that this is a pre-petition claim, and a claim by definition includes any and all contingencies or unliquidated amounts. The court reviews bankruptcy decisions de novo, and the bankruptcy court found in favor of the debtor. As prevailing parties going into the district court appeal, the debtor could not waive any contingent claim argument because it had no obligation to raise any argument, any and every argument in favor of affirming, as the Seventh Circuit has held in the Transamerica case. Similarly, any argument that the contingency claim argument itself had been waived is not waived because this is a matter of pure law and statutory interpretation, and the Seventh Circuit may relieve the appellant of forfeiture when a pure law question is involved. In looking at the conduct that has been asserted as the proper conduct on which to base the assessment of the pre-petition claim, the trustee and debtor submit that the conduct is the enactment of the statute and the meeting of the hospital assessment fee committee for purposes of calculation. That is the conduct that should be operative in terms of establishing whether or not there is a pre-petition claim. The full hospital fee is a pre-petition claim. However, if the court chooses to look at the eligibility of the hospital or its continued operations as a part of the conduct, that conduct is only relevant for purposes of determining the fulfillment of a contingency established at the time the pre-petition claim was established to say, as you continue to operate, you will continue to be responsible for paying this claim established pre-petition. The district court did not give weight to the Bankruptcy Code's definition of claim, which includes the contingent, unliquidated, and unwarranted definitions. The conduct here is the passage of 281, and as such, this should be treated as a pre-petition claim. Your Honor, for the reasons argued here in the brief and discussed further, the debtor requests the panel reverse the district court's opinion and reinstate the bankruptcy opinion. Thank you, Ms. Kennedy. Thank you to all counsel. The case is taken under advisement. Court is adjourned.